UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ELBERT COX, JR., CECIL WAYNE FRANKLIN, JOHN SPEARS, WANDA BEASLEY, DONALD KING, LINDSEY PENNINGTON, TERESA PRESTON, | ) ) ) ) ) | Civil No. 13-406-GFVT |
| and | ) ) | |
| BEVERLY PRESLEY, Personal Representative of the Estate of Annabell Gordon, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| KONINKLIJKE PHILIPS, N.V., and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

*** *** *** ***

In this putative class action lawsuit, former employees at a glass manufacturing facility in Danville, Kentucky, allege that their employer, Defendant Philips Electronics North America, knowingly exposed them to hazardous substances used in the production process and falsely assured them that their working conditions were safe. For the reasons set forth below, the Court will GRANT Philips' motion in part and DENY it in part.

I

Plaintiffs, former employees at a glass manufacturing plant owned and operated by Philips, brought this suit against their employer and its parent company, Koninklijke Philips,

N.V. (KPNV),[1] for injuries that they suffered as a result of alleged unsafe working conditions and exposure to hazardous substances used in their workplace.[2]  As a result of this exposure, Plaintiffs allege that they have suffered physical injury, including colon cancer, lymphoma, chronic obstructive pulmonary disease, and wrongful death, as well as emotional injury.  [*E.g.*, Tendered Second Am. Class Action Compl., R. 63-1 at ¶¶ 1-8].[3]  They also claim that their employer withheld or affirmatively misrepresented the effects of this exposure and the safety of their working conditions. [*Id.* at ¶¶ 73-99].   In all, Plaintiffs' complaint sets forth claims for "deliberate intention," negligence, strict liability, negligent infliction of emotional distress, fraudulent concealment, fraud, and "medical monitoring."  [Tendered Second Am. Class Action Compl., R. 63-1].

After purchasing the site in 1983, Philips operated the Facility for manufacturing various glass products for the lighting industry until 2011.  [*Id.* at ¶¶ 30-31].  It later sold the Facility in 2013.  [*Id.* at ¶ 31].  Plaintiffs identify a number of hazardous substances used in the course of the Facility's operations, including asbestos, mercury, arsenic, lead, PCB compounds (among others).  [*Id.* at ¶ 38].[4]

In their "deliberate intention" and other personal injury claims, Plaintiffs allege that Philips deliberately and intentionally violated safety regulations and exposed the Plaintiffs to these hazardous chemicals, causing them physical injury.  [*Id.* at ¶¶ 143-48].  The complaint

---

[1] In a separate motion at Docket Entry 71, the Court granted Defendant KPNV's motion to dismiss for lack of personal jurisdiction.

[2] A sister case, *Modern Holdings, et al. v. Corning, et al.*, No. 5:13-cv-00405-GFVT, is a putative class action toxic tort lawsuit brought by area residents and landowners against Philips, KPNV, and a prior owner-operator of the facility, Corning, Incorporated.

[3] The Court cites to the Tendered Second Amended Complaint for the reasons set forth in Part II(A), *infra*.

[4] The complaint alleges that Defendants used and released asbestos, mercury, arsenic, beryllium, cadmium, chromium, lead, tin, zinc oxide and other heavy metals, thallium, percholoroethene (PCE), 1-Trichloroethane (TCA), methylene chloride, PCB compounds, benzene, toluene, vanadium, benzo(b)flouranthene, benzo(a)pyrene, ethylbenzene, and chlorinated fluorocarbons (CFC), 2-Butanone (MEK), silica, and ethanolamine. [Tendered Second Am. Class Action Compl., R. 63-1 at ¶ 38].

alleges that Philips knew that unsafe levels of hazardous substances were present in the Facility and was aware of the dangers associated with exposing their employees to these substances, but nonetheless intentionally exposed Plaintiffs to these chemicals and did not take steps to warn them of, or alleviate the risks stemming from, their exposure. [*E.g.*, *id.* at ¶¶ 43-72]. As evidence of specific intent to harm employees, Plaintiffs allege that, in violation of safety regulations, Philips intentionally refused to repair machinery that would reduce employees' chemical exposure and refused to provide their employees with protective apparel despite knowing that it could cause physical injuries. [*E.g.*, *id.* at ¶¶ 43-58, 146-47]. The complaint also details several OSHA citations regarding workplace lead exposure. [*Id.* at ¶¶ 59-63].

In their fraud and fraudulent concealment claims, [*id.* at ¶¶ 174-86], Plaintiffs allege that Philips "intentionally and actively concealed" or affirmatively misrepresented information about the extent of the toxic contamination in their workplace, the receipt of OSHA citations, and the risks associated with exposure to the substances present in the Facility. [*Id.* at ¶¶ 81, 73-87]. They also allege that Philips intentionally misrepresented and falsely assured employees about the risks of chemical exposure. [*Id.* at ¶¶ 81-83]. After certain plaintiffs received blood test results indicating elevated levels of lead in their systems, the complaint alleges, Philips induced the employees not to seek treatment, but instead told them they were safe to return to work. [*Id.* at ¶¶ 76-78].

The complaint also includes counts for strict liability, negligent infliction of emotional distress, and medical monitoring. [*Id.* at ¶¶ 165-73, 187-89]. In addition, the Tendered Second Amended Class Action Complaint proposes a negligence per se claim based on violation of various federal and state environmental statutes and regulations. [*Id.* at ¶¶ 39, 158-64; Pls' Mot. for Leave to File Amended Compl., R. 63].

Philips has moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [R. 13].  At the parties' request, the Court heard oral argument on this and other related motions on February 9, 2015.  [R. 50].

II

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, as is now well known, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a plaintiff need not provide "detailed factual allegations," she must advance more than "a formulaic recitation of the elements of a cause of action."  *Id*. (citing *Twombly*, 550 U.S. at 555).  A court reviewing a 12(b)(6) motion must "accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs," *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005), but it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*. (citing *Twombly*, 550 U.S. at 556).  Ultimately, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).

Philips' Motion to Dismiss chiefly turns on its contention that Kentucky Workers' Compensation Act (KWCA) provides the exclusive remedy for Plaintiffs' recovery.  It also argues that, even if Plaintiffs' fraud and fraudulent concealment claims are not barred by the exclusive remedy provision, they must be dismissed since they have not been pled with

4

specificity under Federal Rule of Civil Procedure 9(b).  Before assessing Philips' affirmative

defense of exclusivity, however, the Court must determine whether Philips has established the

jurisdictional prerequisite that it maintained workers' compensation insurance.

A

Before turning to the merits of Philips' motion to dismiss, Plaintiffs' pending motion for

leave to amend their complaint [R. 63] must be addressed.  Nearly nine months after Defendants'

motions to dismiss stood fully briefed and ripe for decision, Plaintiffs sought leave to amend their

complaint for a second time.  [*Id.*]  They propose to amend several portions of their First Amended

Class Action Complaint.  Their tendered amended complaint adds a number of factual allegations,

including references to state and federal law regarding the hazardous substances at issue in their

claims, [Tendered Second Am. Class Action Compl., R. 63-1 at ¶ 39], additional facts regarding

personal jurisdiction over KPNV, [*id.* at ¶¶ 100-26], the results of preliminary testing that support

their allegations regarding the emission of hazardous substances and the Defendants' alleged

knowledge of this discharge, [*id.* at ¶¶ 127-42], and facts regarding certain OSHA and state

regulatory citations, [*id.* at  ¶¶ 59-63].  They also wish to add a negligence per se claim, [*id.* at ¶¶

158-64], and include a request for bifurcation of issues relating to damages, [*id.* at 49].  Philips

filed a response to this motion, [R. 68], arguing that amendment would be futile for the reasons

stated in its motions to dismiss.

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which

provides that even if the party does not seek the amendment within the of-right period, the court

may give leave to permit such an amendment and should "freely give leave when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  The United States Supreme Court has read this provision

broadly and the Sixth Circuit has held that, "where the underlying facts would support, a motion

5

for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake*, Inc., 195 F.3d 828 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

While Plaintiffs' timing disregards the significant time and resources that the parties and the Court have expended on these long-pending motions to dismiss, as Philips itself suggests, their late-filed amendment need not result in prejudice. Though an amended pleading generally supersedes the original pleading, *see, e.g.*, *Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005), a number of authorities agree that:

> [d]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.

6 Charles A. Wright, et al., Federal Practice & Procedure § 1476 (2005) (citations omitted); *see, e.g.*, *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1111 (D. Minn. 2010) (holding that the pending motion to dismiss "transferred" to the newly filed amended complaint); *Sunset Fin. Res., Inc. v. Redevelopment Grp. V, LLC*, 417 F. Supp. 2d 632, 642 n.15 (D.N.J. 2006) (treating the pending motion to dismiss as if it were directed at the newly filed amended complaint); *Sun Co. (R & M) v. Badger Design & Constructors, Inc.,* 939 F. Supp. 365, 367 n.3 (E.D. Pa. 1996) (same, where new complaint dropped some claims but the motion to dismiss was still germane to the re-alleged counts). Plaintiffs' tendered Second Amended Class Action Complaint does not substantially depart from the prior complaint, except that it adds one additional cause of action (negligence per se). Aside from this additional claim, Philips' existing motion

remains largely responsive and germane to the amended complaint.[5]  Denying these motions as moot and requiring re-briefing in response to the newly-filed complaint would waste judicial resources and further delay the progress of this action.  Accordingly, in the interests of judicial economy and fairness to both parties, the Court will consider the pending motions to dismiss from both Philips and KPNV as if they were directed at the Second Amended Class Action Complaint, to the extent they are applicable.  *Sunset Fin. Res.*, 417 F. Supp. 2d at 642 n.15.

In the companion case to this action, the Court permitted the defendants to file a second motion to dismiss relating to the new portions of the complaint that were unaddressed by the Court's memorandum opinions.  [*See Modern Holdings*, No. 13-cv-405, R. 107].  Here, however, no second briefing period is necessary.  For the reasons set forth below, *see infra* Part II(C)(2)(a), the Court finds that adding the negligence per se claim would be futile.  Accordingly, Plaintiffs' motion for leave to amend the complaint will be granted in part and denied in part.

## B

During the briefing period on the motion to dismiss, the parties submitted over sixty pages of briefing and exhibits relating to whether Philips had Workers' Compensation insurance for the entire period at issue – a prerequisite to asserting the affirmative defense of exclusivity under the KWCA.  [R. 18, 22, 25; R. 27, 34, 37].  In order to avail itself of the protections of the KWCA, an employer must first "secure payment of compensation" pursuant to Kentucky Revised Statute (KRS) § 342.690.  *Gordon v. NKC Hosps., Inc.*, 887 S.W.2d 360, 362 (Ky. 1994).  Here, Philips submitted a state-issued Certification of Coverage, which stated that Philips "did have . . . insurance . . . from 1983 through 2011," but through an apparent oversight failed to

---

[5] KPNV's motion to dismiss, which is based upon lack of personal jurisdiction, is also unaffected by the amended complaint, since all of the jurisdictional facts added by the Plaintiffs were also adduced at the evidentiary hearing on personal jurisdiction.  The merits of KPNV's motion to dismiss are addressed in a separate Order.  *See supra* note 1.

list its specific coverage dates and carrier for the period between January 1, 2005 to December 31, 2006.  [R. 25-1].  Philips later submitted a corrected Certificate indicating coverage during this period, as well as the full period from 1983 through 2011.  [R. 37].

Although Plaintiffs attempt to argue that the discrepancy in the first certificate creates a fact question, the Kentucky Supreme Court has held that "[a] certification of coverage from the Department of Workers' Claims or an uncontroverted affidavit from the employer's insurer is prima facie proof that a company has secured payment of compensation for the purposes of KRS 342.690(1)."  *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 605 (Ky. 2007), *as corrected & modified on denial of reh'g* (Nov. 21, 2007).  The court in *Cain* specifically rejected the appellate court's conclusion that, despite the filing of a certification, a fact question on coverage existed.  The most recently submitted Certification [R. 37-2] is conclusive, and the Court need not, and has not, considered the extraneous exhibit that was the subject of Philips' Motion to Strike.  [R. 27].  Accordingly, that motion will be denied as moot.  Having satisfied the jurisdictional prerequisite, Philips can proceed with its affirmative defense under the KWCA's exclusivity provision.

C

Philips argues that the exclusive remedy provision of the KWCA bars all of Plaintiffs' claims. Plaintiffs, however, argue that their personal injury, negligent infliction of emotional distress, and intentional tort claims are not barred.  The Court assesses each of these claims in turn.

1

Plaintiffs' argument that the KWCA does not preclude their personal injury claims rests on the "deliberate intention exception."  In Count I of their complaint, they allege that Philips acted with deliberate intent to cause their injuries and deliberately exposed employees to

working conditions that it knew were dangerous, which Plaintiffs say constitutes specific intent to harm.  [Tendered Second Am. Class Action Compl., R. 63-1 at ¶¶ 143-48].

The KWCA, like most workers compensation statutes, represents a balance of employer and employee interests.  The Act "affords an injured worker a remedy without proof of the common law elements of fault."  *Cain*, 236 S.W.3d at 606.  At the same, that remedy is generally "exclusive of the remedies available under common law."  *Id.* (citing KRS § 342.690).  However, the "deliberate intention exception" to the exclusive remedy rule provides that if an employee is injured or killed as a result of the "deliberate intention of his or her employer to produce such injury or death," the employee may bring a civil tort action against his employer in lieu of accepting recovery under the Act.  KRS § 342.610(4); *see also* KRS § 342.690(1) (providing that an employer enjoys exemption from liability except in cases "where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director").

This exception is a narrow one.  The Kentucky Supreme Court has interpreted "deliberate intention" to mean that "the employer must have determined to injure the employee and used some means appropriate to that end, and there must be specific intent."  *Fryman v. Elec. Steam Radiator Corp.*, 277 S.W.2d 25 (Ky. 1955); *see also Rainer v. Union Carbide Corp.*, 402 F.3d 608, 616 (6th Cir. 2005) (citing *Fryman*, 277 S.W.2d at 27); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527 (6th Cir. 1999).  Applying this narrow definition, the Court recently held that the intentional violation of safety statutes, by itself, is insufficient to overcome the exclusivity bar.  *Moore v. Envtl. Constr. Corp.*, 147 S.W.3d 13, 17-18 (Ky. 2004).

In *Moore*, a construction employee was killed when a trench in which he was working caved in on him.  *Id.* at 16.  Evidence at trial showed that the superintendent and foreman

consciously decided not to shore up the walls of the trench, in violation of Occupational Safety and Health Administration regulations.  The jury returned a verdict for the plaintiff, but the trial court later determined that "the safety violations did not amount to a deliberate intent on the part of [the employer] to bring about the death of [the employee]," and it entered judgment notwithstanding the verdict for the defendant.  *Id.* at 16.

> The Kentucky Supreme Court affirmed the JNOV and held that:
>
> violations of OSHA regulations or other safety standards alone do not rise to the level of an intentional wrong necessary to overcome the Workers' Compensation exclusivity provisions because mere knowledge and appreciation of the risk involved in an act is not the same as the intent to cause the injury. Mere carelessness or negligence, however gross, wanton or reckless, does not establish such intent.

*Moore*, 147 S.W.3d at 17-18.  Applying the strict specific intent standard from *Fryman*, the Court found that there was no indication that the employer's violation of safety regulations was committed with the specific intention of harming the employee.  *Moore*, 147 S.W.3d at 16 (citing *Fryman*, 277 S.W.2d at 27).  As such, the plaintiffs had failed to overcome the exclusivity of the KWCA remedy.

In a strikingly similar case involving workplace chemical exposure, Judge Coffman held that the deliberate intention exception was not met.  *Blanton v. Cooper Indus., Inc.*, 99 F. Supp. 2d 797, 800 (E.D. Ky. 2000).  There, employees were exposed to certain chemicals that the employer knew were carcinogenic, but the employer never took any measures to reduce or alleviate the risks. Without any evidence that this was done with the specific intent of harming the employees, Blanton could not trigger the deliberate intention exception, and his claim was dismissed.  *See also Rainer*, 402 F.3d at 616 (citing *Fryman*, 277 S.W.2d at 27) (dismissing employees' claims that their employer, a nuclear plant, knowingly exposed them to radioactive substances in violation of the Price-Anderson Act, since they could not show that the employer specifically intended to cause

them injury).

Plaintiffs argue that they have set forth sufficient factual allegations to satisfy this strict definition.  The complaint alleges that Philips knew of the dangers associated with exposing its employees to the hazardous substances at issue and was aware that unsafe levels of those substances existed in the Facility.  [Second Am. Class Action Compl., R. 63-1 at ¶¶ 59-63, 66-69].  As evidence of specific intent to harm employees, Plaintiffs allege that, in violation of safety regulations, Philips intentionally refused to repair machinery that would reduce employees' chemical exposure and refused to provide their employees with protective apparel despite knowing that it could cause physical injuries.  [*Id.* at ¶¶ 43-58, 146-47].  They also point to OSHA citations indicating that Philips was aware of certain safety violations relating to lead dust exposure.  [*E.g.*, *id.* at ¶¶ 59].  In essence, they allege that Philips knowingly exposed workers to unsafe working conditions despite a "high degree of risk and a strong probability of serious injury or death."  [*Id.* at ¶ 69].

Even accepting these allegations as true, however, it cannot be reasonably inferred that Philips harbored a specific, deliberate intent to cause harm to the Plaintiffs.  Rather, the most Plaintiffs have plausibly pled is that Philips – precisely like the employers in *Moore* and *Blanton* – was aware of safety violations, but intentionally and consciously chose not to take steps to come into compliance, thereby exposing their employees to risk of injury or death.  This may be "gross, wanton, or reckless" behavior, but under the Kentucky Supreme Court's interpretation of the exception, it cannot constitute intent.  *See Moore*, 147 S.W.3d at 18 ("Mere carelessness or negligence, however gross, wanton or reckless, does not establish such intent.").  While it is perhaps *conceivable* that Philips might have held a deliberate intent to expose plaintiffs to these substances so that they might fall ill or get injured, it is simply not plausible under these facts.

Because Plaintiffs have "not nudged their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 547, it cannot be said that they have stated a claim for their personal injuries under the deliberate intention exception to the KWCA.

In an effort to save their claim, Plaintiffs urge this Court to adopt the "substantial certainty" test used by other jurisdictions.  But the Kentucky Supreme Court in *Moore* specifically declined to adopt an alternative definition of "deliberate intent."  *Moore*, 147 S.W.3d at 19-20 (rejecting plaintiffs' arguments regarding "inferred intent" or "constructive intent"). "[A] federal district court in a diversity case is not free to ignore applicable state law," *Hosp. Underwriting Grp., Inc. v. Summit Health Ltd.*, 63 F.3d 486, 493 (6th Cir. 1995), and this Court is bound by the controlling precedent in *Moore*.  Under that precedent, Plaintiffs have not pled sufficient facts to make it plausible that Philips specifically intended to cause their personal injuries.  Accordingly, Philips is entitled to immunity under the exclusive remedy provision as to Plaintiffs' personal injury claims, and those claims must be dismissed.

2

Plaintiffs contend that, even if they cannot show that Philips deliberately intended to cause them physical injury, Philips' immunity does not reach all of their claims. They argue that their claims for negligent infliction of emotional distress (NIED), fraudulent concealment, and fraud are not barred by the exclusive remedy provision and, moreover, that they survive Philips' motion to dismiss.  Before turning to Philips' arguments for dismissal of these claims, the Court must first assess the scope of the exclusive remedy provision as it relates common law tort claims.

a

Plaintiffs argue that a worker retains the right to assert any common law claim that is not

12

compensable under the KWCA. For support, Plaintiffs cite Larson's treatise on Workers'

Compensation law, which states:

> If the essence of the tort, in law, is non-physical, and if the injuries are of the
> usual non-physical sort, with physical injury being at most added to the list of
> injuries as a makeweight, the suit should not be barred. But if the essence of the
> action is recovery for physical injury or death, *including in "physical" the kinds
> of mental or nervous injury that cause disability,* the action should be barred even
> if it can be cast in the form of a normally non-physical tort.

[Pls' Resp. to Mot. Dismiss, R. 15 (emphasis by Plaintiffs) (citing 9-104 Larson's Workers'

Compensation Law § 104.05)].  Under this test offered by Plaintiffs, the NIED, fraud, and

fraudulent concealment claims need not satisfy the deliberate intention test.  Instead, Plaintiffs

insist that they need only show that those claims are not compensable under the KWCA.

Philips, on the other hand, points to the KWCA's exclusive remedy provision, which

states that, so long as an employer secures payment of workers' compensation,

> the liability of such employer under this chapter shall be exclusive and in place of
> all other liability of such employer to the employee, . . . provided the exemption
> from liability . . . shall not apply in any case where the injury or death is
> proximately caused by the willful and unprovoked physical aggression of [an]
> employee, officer or director.

KRS § 342.690(1).  The plain language of the statute, Philips argues, demonstrates that the

deliberate intention exception is the sole exception to an employer's otherwise exclusive

immunity under the KWCA.  In its view, the KWCA bars all common law tort claims unless this

exception is met.

Following this plain language, the overwhelming majority of Kentucky cases bar

common law tort claims unless the narrow deliberate intention exception is satisfied.  *E.g*., *Casey

v. Vanderlande Indus*., 2002 U.S. Dist. LEXIS 11956, *3-4, 2002 WL 1496815 (W.D. Ky. June

28, 2002) (dismissing negligence claim against employer for a workplace injury and stating that

"Kentucky Workers' Compensation Act preempts common-law tort claims by an employee

against his employer"); *Grego v. Meijer, Inc.*, 239 F. Supp. 2d 676, 683 (W.D. Ky. 2002) (holding that the exclusivity provision bars negligent supervision claims between an employer and employee); *Wymer v. JH Props., Inc.*, 50 S.W.3d 195 (Ky. 2001) (affirming the dismissal of a hospital employee's claims of wrongful discharge, outrage, defamation, fraud, false light, but reversing the dismissal of her medical malpractice claim against her hospital-employer, since "[t]he medical malpractice injury was not in the course and scope of her employment"); *Hardin v. Action Graphics, Inc.,* 57 S.W.3d 844, 846 (Ky. App. 2001) (holding that the plain language of the exclusivity provision of Workers' Compensation Act barred parents' loss of consortium claim because he was killed during the course and scope of his employment); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527 (6th Cir. 1999) (rejecting plaintiff's wrongful death action since she could not show that the employer "intentionally and physically attacked" the decedent-employee); *Bischoff v. Sears, Roebuck & Co.*, 861 F.2d 719 (6th Cir. 1988) (holding that the plain text of the exclusivity provision barred plaintiffs' claim of negligent hiring and retention); *Bishop v. Wal-Mart Stores*, 24 Fed. App'x 236 (6th Cir. 2001) (unpublished) (affirming dismissal of wrongful death suit brought by husband of deceased employee, since he "simply made no allegation that either defendant acted with deliberate intention to cause [the employee's] death").  Indeed, in a case closely resembling the facts of the present case, the Kentucky Supreme Court in *Shamrock Coal Co. v. Maricle*, 5 S.W.3d 130, 135 (Ky. 1999), easily dismissed the plaintiff-coal workers' claim for intentional infliction of emotional distress arising from their employers' intentional violation of safety regulations and workplace toxic exposure because there was no deliberate intent on the part of the employer.

The cases cited by Plaintiffs are outliers.  First, our sister court's decision in *Haggard v. Martin*, 2002 U.S. Dist. LEXIS 7379, *8, 2002 WL 753230 (W.D. Ky. Apr. 25, 2002) is actually

consistent with the notion that a common law tort claim must meet the deliberate intent exception.  The *Haggard* Court held that the plaintiff's fraudulent misrepresentation and intentional distress claims were not barred by the statute.  Citing the above-quoted excerpt from Larson's treatise, the court stated that "the KWCA should not bar actions for [injuries that are not compensated by the Act], because it offers no remedy for them."  *Id*. at *6-7.  But this reasoning was not the ultimate basis for the court's decision.  Rather, after citing the deliberate intent provision, it held that the plaintiffs' claims could go forward because they reflected an "intentional injury."  *Id.* at *8 (emphasis in original) (summarily concluding that "[t]he KWCA's exclusivity provisions do not apply here because Haggard has alleged *intentional* infliction of emotional distress and *intentional* fraudulent misrepresentation.").

Plaintiffs' best argument stems from the Kentucky Court of Appeals' two-paragraph analysis in *Columbia Sussex Corporation v. Hay*, 627 S.W.2d 270, 279 (Ky. Ct. App. 1981).  In that case, a hotel was robbed under circumstances suggesting that an employee may have been involved.  The plaintiff, a manager of the hotel, was confronted by her superior, who insinuated that the plaintiff had been involved in the crime; the plaintiff also claimed she was falsely imprisoned while taking a required lie detector test.  After a lengthy analysis of the merits of these claims, the Kentucky Court of Appeals quickly rejected the employer's argument that the slander per se and false imprisonment were barred by the KWCA.  *Id.* at 279.  The court's analysis turned on the compensability of the underlying injuries:

> The purpose of Workers' Compensation is to redress physical and mental injuries and damages arising from the employment relationship. The crux of a slander per se action is not injury, for no actual damages are required to be shown. Likewise, false imprisonment stands or falls upon elements which may result in damages, but again such are not requisite for a prima facie case.
>
> Inasmuch as liability for slander per se and false imprisonment can be established without a showing of actual damages, there is nothing for which the

> Workers' Compensation Act would compensate. The Act is strictly limited to recovery for actual injuries; thus, the fact that damages under either cause could punitively be assigned does not serve to extend its application.

*Id.* at 279.

However compelling the reasoning in *Hay* (and the dicta in *Haggard*) may be, it has simply not been applied by Kentucky courts.  In the thirty years since it was decided, no Kentucky opinion aside from *Haggard* has cited or echoed the compensability test in *Hay*.  Instead, the controlling factor for whether common law tort claims are barred by the exclusivity provision continues to be the presence of deliberate intention.  *E.g.*, *Maricle*, 5 S.W.3d at 135.  Without firm guidance from Kentucky law, a federal court sitting in diversity must make the "'the best prediction, even in the absence of direct state precedent, of what the Kentucky Supreme Court would do if it were confronted with [the] question.'"  *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citation omitted).  In making such a pronouncement about state law, federal courts must "proceed with caution."  *Id.*  The predominant authority in Kentucky case law and the plain language of the exclusivity provision persuades the Court that a plaintiff's common law tort claim is barred by the KWCA unless he can demonstrate that it satisfies the deliberate intention exception.

Under this test, Plaintiffs' NIED claim and proposed negligence per se claim cannot satisfy the deliberate intention test as a matter of law.  A negligence claim, by definition, cannot demonstrate the requisite scienter of specific intent.  *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012) (noting that NIED cases are based on "general negligence principles"); *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. Ct. App. 2009) (citations omitted) ("Negligence per se is merely a negligence claim with a statutory standard of care substituted for the common law standard of care.").  The NIED claim must therefore be dismissed.  Because "[a] proposed amendment is

16

futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss," *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Michigan Dept. of Treasury,* 987 F.2d 376, 382-83 (6th Cir. 1993)), Plaintiffs' motion to amend, as it relates to this negligence per se claim, must also be denied.

Similarly, Plaintiffs' strict liability and medical monitoring claims cannot survive the exclusivity bar.  A strict liability claim, by definition, requires no intent, so it cannot meet the deliberate intention exception.  *Franz v. Ashland Hosp. Corp.*, No. 2009-CA-002269-MR, 2014 WL 813085, at *4 n.2 (Ky. Ct. App. Feb. 28, 2014) ("With respect to strict liability, intent is simply irrelevant.").  And to the extent Plaintiff's medical monitoring claim seeks future compensation for the physical injuries they sustained in the workplace, that claim is likewise barred by the exclusivity provision.  Without any argument or authority to the contrary from Plaintiffs, these claims must also be dismissed.

On the other hand, Plaintiffs' fraud and fraudulent concealment claims are not barred by the KWCA under the facts as alleged.  At this stage, the Court must accept as true Plaintiffs' allegations that Philips was aware of the dangerous nature of the substances in the workplace but intentionally withheld that information from plaintiffs; that Philips falsely assured Plaintiffs that exposure was benign; and that Philips' employees affirmatively made false statements about these substances and about working conditions, OSHA violations, or equipment functions.  [*E.g.*, Tendered Second Am. Class Action Compl., R. 63-1 at ¶¶ 28, 75, 81].  These allegations are sufficient to make it at least plausible that Philips specifically intended to cause harm to the plaintiffs by withholding, concealing, or misrepresenting this information.  At this 12(b)(6) stage, Plaintiffs have alleged enough facts to satisfy the deliberate intention exception, so their fraud and fraudulent concealment claims are not precluded by the KWCA.

b

Philips argues that, even if Plaintiffs' fraud and fraudulent concealment claims survive the KWCA's exclusive remedy provision, they must be dismissed pursuant to Federal Rule of Civil Procedure 9(b).  "Because claims based on fraud pose 'a high risk of abusive litigation,' Rule 9(b) requires the plaintiff to 'state with particularity the circumstances constituting fraud or mistake.'"  *Republic Bank & Trust Co. v. Bear Stearns & Co*., 683 F.3d 239, 247 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 569 n.14; Fed. R. Civ. P. 9(b)).  Two purposes undergird this rule. Its "overarching purpose is to ensure that a defendant possesses sufficient information to respond to an allegation of fraud."  *United States ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008) (citation omitted).  The rule also aims to "discourage 'fishing expeditions and strike suits' which appear more likely to consume a defendant's resources than to reveal evidences of wrongdoing."  *Id*. at 504 (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 510 (6th Cir. 2007)).

Rule 9(b)'s heightened pleading standard applies to all of the substantive elements of fraud and fraudulent concealment.  This means that a plaintiff must "(1) [] specify the allegedly fraudulent statements; (2) [] identify the speaker; (3) [] plead when and where the statements were made; and (4) [] explain what made the statements fraudulent." *Republic Bank*, 683 F.3d at 247 (6th Cir. 2012) (citations omitted).  Notwithstanding this more stringent requirement, the Sixth Circuit "reads this rule liberally," *Coffey v. Foamex L.P*., 2 F.3d 157, 161 (6th Cir. 1993), and Rule 9(b) must be "read in conjunction with" the Rule 8. 5A Charles A. Wright, Fed. Prac. & Procedure § 1298 (3d ed.); *e.g.*, *SNAPP, Inc.*, 532 F.3d at 503 ("Rule 9(b) adds additional pleading requirements for allegations of fraud or mistake, but it should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules");

*Govaerts v. Suntec Indus. Inc*., No. 1:09-CV-147-M, 2010 WL 2178517, at *6 (W.D. Ky. May 26, 2010) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988)) ("In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Rule 8 requires a 'short and plain statement of the claim,' and calls for 'simple, concise, and direct' allegations."); *Hodak v. Madison Capital Mgmt., LLC*, No. CIV.A. 5:07-5-JMH, 2007 WL 1434875, *7 (E.D. Ky. May 14, 2007) (noting, in a pre-*Iqbal* case, that "the particularity requirement of [Rule] 9(b) is to be balanced with the minimal pleading requirements of [Rule] 8.").  Absolute particularity is therefore not required.  Instead, "[s]o long as a [plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *SNAPP, Inc*., 532 F.3d at 504; *see also Fujisawa Pharm. Co. v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993) ("Read together, these Rules require that the time, place and contents of fraud be plead, but the complainant need not plead evidence.").

The complaint alleges that Philips "intentionally and actively concealed" the following from Plaintiffs:

- "the fact that internal air quality tests had failed, that Philips had received multiple and repeated OSHA citations, and that the Facility was an unsafe work environment." [Tendered Second Am. Class Action Compl., R. 63-1 at ¶ 75];
- "the risks associated with continued exposure to the Hazardous Substances contained in the dust filling the air inside the Facility." [*Id.* at ¶ 81; *see also* ¶ 28];
- "the nature and extent of the injuries suffered by Plaintiffs in being exposed to the Hazardous Substances in question." [*Id.* at ¶ 28];
- "information regarding the dangers of the Plaintiffs' exposure to the Hazardous Substances and the physical illnesses suffered by Plaintiffs as a result for the purpose of saving money and also for the purpose of inducing Plaintiffs to continue working in the abnormally dangerous conditions." [*Id.*];

- information regarding "respiratory and other problems experienced by the Plaintiffs . . . and their relationship to the Hazardous Substances used and/or generated at the Facility." [*Id.* at ¶ 86].

These allegations set forth the specific information that was omitted or misrepresented and are sufficiently particular to "provide fair notice to Defendants and enable them to 'prepare an informed pleading responsive to the specific allegations of fraud.'" *SNAPP*, 532 F.3d at 504; *see also Govaerts*, 2010 WL 2178517 at *6 (holding that plaintiff's fraudulent concealment claim regarding a failure to disclose the existence of a contract to his employer over the course of twenty-three years' employment was sufficient to survive Rule 9(b)).

*Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993), an employee toxic tort case cited by Philips, is distinguishable.  According to the Sixth Circuit's opinion, the employees simply alleged that their employer "fail[ed] to warn them of the dangers of contamination and [] maintain[ed] a hazardous work environment of which the plaintiffs were unaware."  *Id.* at 159. Unlike the conclusory allegations in *Coffey*, Plaintiffs' complaint is more particular about the content of the allegedly withheld information.  [*E.g.*, Tendered Second Am. Class Action Compl., R. 63-1 at ¶ 75 (undisclosed air quality tests and OSHA violations); *id.* at ¶ 86 (resulting respiratory problems)].  At this stage in the litigation, specific technical data about the amount and nature of the hazardous substances emissions is in the hands of the Defendants, and scientific data about the medical effects of exposure is the type of information that would be ascertained in the discovery process. *Cf. Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("[C]ourts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control."); *In re Computer Assocs. Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999) (applying Rule 9(b) with more leniency where, in a corporate fraud case, the exact amounts of fraudulent earnings were "the type of information peculiarly within the

defendant's control").  Even under the heightened requirements of Rule 9(b), Plaintiffs have

identified with sufficient "precis[ion] what was omitted" at this pre-discovery stage.  *Republic*

*Bank*, 683 F.3d at 256.

Plaintiffs' fraud claim, however, does not satisfy the particularity requirement.  The

complaint alleges that Philips made a number of fraudulent misrepresentations:

- "Plaintiffs were continually told by [human resources and management personnel] that the machinery would be repaired and that the exposure to [Renite/peening oil] would not be harmful to their health." [Tendered Second Am. Class Action Compl., R. 63-1 at ¶ 51];
- "When Plaintiffs complained about [clouds of lead dust and other hazardous substances] . . . they were falsely and categorically assured by the management and environmental health and safety coordinators . . . that the areas in which they worked were safe and posed no unreasonable threat of harm to their health." [*Id.* at ¶ 73];
- "When this sensation [that the air inside the plant tasted "sweet," an indicator of the presence of lead gas or dust] was reported to the Plaintiffs' management or human resources, the workers were falsely told the gas or dust did not pose a threat of physical harm to the workers . . . ." [*Id.* at ¶ 74];
- "[Plaintiff] Franklin was fraudulently assured at the time that returning to the Mix House [where, while working, Franklin's blood tests showed elevated levels of lead] did not pose a threat to his health or safety." [*Id.* at ¶ 77];
- "Philips human resources employees informed these workers [who had been removed from the plant due to elevated levels of lead in their blood] that lead levels had diminished, and that it would be safe for [them] to return to Mix House duty." [*Id.* at ¶ 78];
- Philips [Electronics] management, including management or environmental health and safety employees . . . falsely informed the Plaintiffs that they were safe and that the existing safety equipment and procedures would protect them from further exposure or harm." [*Id.* at ¶ 81].

Conspicuously absent from these allegations, however, is any reference to the time when

these statements were made.  In *Ashland Inc. v. Oppenheimer & Co.*, 689 F. Supp. 2d 874 (E.D.

Ky. 2010), cited by Philips, the plaintiff had only vaguely alleged the months and years in which

certain fraudulent misrepresentations were made.  *Id.* at 883.  This Court noted that, while the

deficiency "undermine[d]" the plaintiff's complaint, it was not "automatically fatal."  *Id.*

Here, however, the facts militate a different conclusion about the complaint's specificity.

The *Ashland* complaint involved allegations of fraudulent misrepresentations between 2007 and 2008. *Id.* at 882-83. In contrast, Plaintiffs' fraud allegation spans the twenty-eight years that Philips owned and operated the Facility. [*See* Tendered Second Am. Class Action Compl., R. 63-1 at ¶¶ 30-31]. Rule 9 was designed to guard against this precisely kind of problematic pleading. Given the lengthy time span in this case, not to mention the fact that the Facility is now closed and the relevant speakers are now presumably scattered, it would be difficult for Defendants to determine when these statements were made and precisely who made them. *Michaels Bldg Co.*, 848 F.2d at 679 ("[T]he purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."). The second purpose of the rule is undermined as well: Without *any* temporal references to cabin the scope of their allegation, this claim simply invites a "fishing expedition." *See, e.g.*, *Conlee v. WMS Indus., Inc.*, No. 11 C 3503, 2012 WL 3042498, at *5 (N.D. Ill. July 25, 2012) ("A vague and ill-formed complaint can lead to more expansive (and expensive) document production and unnecessarily lengthy depositions covering needless factual ground."). Unlike the technical and scientific content that was the subject of Plaintiffs' fraudulent concealment claim, the general timeframes in which these affirmative misstatements were made is precisely the kind of information that would be in the hands of the plaintiffs and could be at least approximated without discovery.

It should be noted that the Sixth Circuit and other courts have applied Rule 9(b)'s requirements with more leniency in the context of complex or lengthy transactions. *E.g.*, *Bledsoe*, 501 F.3d at 511 (emphasis added) (requiring, in the context of a False Claims Act suit, at least a "*general time frame*, substantive content, and relation to the allegedly fraudulent scheme[,] . . . thereby striking an appropriate balance between affording the defendant the

22

protections that Rule 9(b) was intended to provide and allowing relators to pursue complex and far-reaching fraudulent schemes without being subjected to onerous pleading requirements"); *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989) (stating that the court "will not require Defendant to detail each and every incident of Plaintiff's alleged fraud" since the alleged scheme occurred over seven years, but nonetheless requiring repleading with "some factual support for its allegations"); Charles A. Wright, Federal Practice & Procedure § 1298 (2d ed. 1990).  While the Court does not require Plaintiffs to allege the date of each and every misrepresentation in this twenty-three-year, ongoing[6] set of events, a complaint that is devoid of any temporal specificity cannot satisfy even this more lenient standard.  *E.g.*, *Tatum v. Oberg*, 650 F. Supp. 2d 185, 191 (D. Conn. 2009) (noting that, without any specific temporal allegations, "[a] span of approximately forty-one months is clearly insufficient to meet the particularity requirements of Rule 9(b)");  *Hargrove & Constanzo v. C.I.R.*, 240 F.R.D. 652, 658 (E.D. Cal. 2006) ("Though there is some leeway to be given when the conduct alleged took place over a long period of time, a blanket statement covering five years will not do."); *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 855 (C.D. Cal. 2004) (dismissing claim under Rule 9(b) because plaintiffs' allegation that the fraudulent statements were made "[p]rior to December 1, 1998" was too broad and vague).  Since they have not set forth "sufficient detail—in terms of

---

[6] The fact that the alleged misrepresentations were made "routinely" [*e.g.*, R. 63-1 at ¶ 78] or on an ongoing basis [*see* R. 63-1 at ¶¶ 73-99] does not eliminate the requirement that some time period must be identified.  For instance, in the False Claims Act context, the Sixth Circuit has held that in order to sufficiently state a claim for a lengthy, ongoing fraudulent scheme, the plaintiff need not identify every fraudulent transaction, but must at least particularize "examples of specific false claims" in order to satisfy Rule 9(b).  *Bledsoe*, 501 F.3d at 510.  In pleading those representative examples, an FCA claim "should, in all material respects, include[e] general time frame, substantive content, and relation to the allegedly fraudulent scheme, [] such that a materially similar set of claims could have been produced with a reasonable probability by a random draw from the total pool of all claims.  *Id.* at 511.  Analogously, the ongoing misrepresentations alleged here must at least particularize some representative occurrences or misstatements – complete with a "general time frame" – so as to apprise the Court and the Defendants of the conduct at issue.

time, . . . —to allow the defendant to prepare a responsive pleading," Plaintiffs' fraudulent

misrepresentation claim, as it currently stands, cannot satisfy Rule 9(b). *SNAPP, Inc*., 532 F.3d

at 504. Nonetheless, Court will dismiss the fraud claim without prejudice so that Plaintiffs will

have the opportunity to attempt to cure this pleading deficiency. *E.g.*, *Coffey*, 2 F.3d at 161; *St.

Martin v. KFC Corp*., 935 F. Supp. 898, 909 (W.D. Ky. 1996).

C

Finally, Philips argues that Plaintiff Donald King must be dismissed from this lawsuit

pursuant to his 2011 settlement and release of claims with Philips. In that agreement, which

Philips attached as an exhibit to its motion, King accepted a severance payment upon his

termination in exchange for the release of "any and all known or unknown claims [against

Philips and its parent companies], except for existing workers' compensation claims." [R. 13-4].

Arguing that Philips' exhibit converted the instant motion to dismiss into a motion for summary

judgment, Plaintiffs contend that contract's ambiguities and the alleged "financial duress"

surrounding King's execution of the contract raise fact questions as to its enforceability. The

Sixth Circuit has noted that consideration of employee releases at the motion to dismiss stage

converts a motion into one for summary judgment. *Dorn v. Gen. Motors Corp*., 131 F. App'x

462, 468 n.4 (6th Cir. 2005) (finding error, though harmless under the circumstances); Fed. R.

Civ. P. 12(d). Accordingly, and in light of this genuine issue of material fact that has only been

addressed in pleadings, the Court must permit Donald King's claim to go forward into the

discovery phase of this case. The Court notes, however, that because Donald King has signed

the agreement and accepted the $10,200 severance payment, [King Aff., R. 15-1], he must tender

a return of the sum he received before he may contest the validity of the agreement and maintain

this action. *Rigsby v. Ashland Inc.*, No. 2008-CA-001265-MR, 2009 Ky. App. Unpub. LEXIS

24

725, 2009 WL 2569133, at *3 (Ky. Ct. App. Aug. 21, 2009) ("Because appellants failed to tender or return the consideration given for the 1997 settlement agreement prior to commencing the present action, the trial court properly dismissed their complaints."); *McGregor v. Mills*, 280 S.W.2d 161 (Ky. 1955).

III

Accordingly, for the foregoing reasons, it is hereby **ORDERED** as follows:

1.     Defendant Philips' Motion to Dismiss [R. 13] is **GRANTED**;

2.     Plaintiffs' claims, except its claims for fraud and fraudulent concealment, are **DISMISSED WITH PREJUDICE**;

3.     Plaintiffs' claim for fraud is **DISMISSED WITHOUT PREJUDICE**;

4.     Defendant Philips' Motion to Strike [R. 27] is **DENIED AS MOOT**;

5.     Plaintiffs' Motion for Leave to File an Amended Complaint [R. 63] is **GRANTED in part**, in that the complaint may be amended to include the additional factual allegations and request for bifurcation set forth in the tendered amended complaint [R. 63-1], and **DENIED in part**, in that Plaintiffs may not amend their First Amended Class Action Complaint to allege the additional negligence per se claim;

6.     Within **fourteen (14) days** of the date of this Order, Plaintiffs **SHALL FILE** an amended complaint consistent with this Memorandum Opinion and Order.

This the 31st day of March, 2015.



Signed By:

*Gregory F. Van Tatenhove*

United States District Judge