UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| MODERN HOLDINGS, LLC, GAY BOWEN, GREENLEAF PLANT FOOD WHOLESALE, INC., and BOBBIE LEMONS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil No.: 13-405-GFVT |
| v. | ) ) | |
| CORNING INCOPORATED, KONINKLIJKE PHILIPS, N.V., and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, | ) ) ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) | |

***and***

| | | |
|---|---|---|
| ELBERT COX, JR., CECIL WAYNE FRANKLIN, JOHN SPEARS, WANDA BEASLEY, DONALD KING, LINDSEY PENNINGTON, TERESA PRESTON, | ) ) ) ) ) ) | |
| and | ) ) | Civil No.: 13-406-GFVT |
| BEVERLY PRESLEY, Personal Representative of the Estate of Annabell Gordon, | ) ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| KONINKLIJKE PHILIPS, N.V., and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

*** *** *** ***

These sister environmental mass tort class actions allege that the operators of a glass manufacturing facility in Danville, Kentucky injured employees (*Cox, et al. v. Philips Electronics North America Corp., et al.*, No. 13-cv-406-GFVT) and caused personal injury and property damage to area residents and landowners (*Modern Holdings, LLC, et al. v. Corning Incorporated, et al.*, No. 13-cv-405-GFVT) by illegally disposing of certain hazardous substances and contaminating the workplace, as well as area groundwater, air and soil. Koninklijke Philips, N.V. (KPNV), the Dutch parent company to Philips Electronics North America Corporation, is party to both actions and has filed motions to dismiss for lack of personal jurisdiction in both cases.  [*Modern Holdings*, No. 13-cv-405-GFVT, R. 50; *Cox*, No. 13-cv-406-GFVT, R. 20].  After conducting an evidentiary hearing, the Court finds that it is without jurisdiction over KPNV, and it will GRANT its motions to dismiss in both actions.

I

Plaintiffs filed these sister class action lawsuits against the owner-operators of a Danville, Kentucky glass manufacturing facility – Corning Incorporated and subsequent-purchaser Philips Electronics North America Corporation – as well as Koninklijke Philips, N.V. (KPNV), parent company to Philips Electronics.  In *Modern Holdings, LLC, et al. v. Corning Incorporated, et al.*, No. 13-cv-405-GFVT, area landowners and residents allege that Corning and Philips Electronics caused personal injury and property damage by discharging hazardous substances, including asbestos, mercury, arsenic, lead, and PCB compounds (among others), from the Facility into area streams and fields.  In *Cox, et al. v. Philips Electronics, et al.*, No. 13-cv-406-GFVT, former Philips Electronics employees allege that their employer deliberately intended to cause them personal injury by exposing them to these substances and failing to warn of the risks of exposure. In both cases, Plaintiffs allege that KPNV communicated with Philips Electronics and was aware

2

of the contamination in the area.  [*Modern Holdings*, Second Am. Class Action Compl., R. 108 at ¶ 67; *Cox*, Tendered Second Am. Class Action Compl., R. 63-1 at ¶ 65].[1]  They also contend that KPNV was under "an independent duty to protect the Plaintiffs and prevent [the] contamination . . . yet failed to fulfill this duty."  [*Id.*]  KPNV has filed motions to dismiss the complaints in both cases for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  [*Modern Holdings*, No. 13-cv-405-GFVT, R. 50; *Cox*, No. 13-cv-406-GFVT, R. 20].  The parties briefed this issue, and the Court conducted an evidentiary hearing on March 9, 2015.  [*Modern Holdings*, R. 101; *Cox*, R. 66].  Though the two cases bear slightly different facts, the same jurisdictional facts apply in both cases, and the Court addresses both of KPNV's motions in this single opinion.

KPNV is a holding company incorporated in the Netherlands, where it maintains its corporate offices and principal place of business.  Philips Electronics, which owned and operated the Facility between 1983 and February 2011,[2] is one of its many wholly-owned subsidiaries. Relevant here, KPNV also owns Philips Lighting, B.V., a distinct subsidiary based in the Netherlands, [R. 55-6 at 9; *see* Hr'g Tr. 103, 117, *Modern Holdings*, R. 105, *Cox*, R. 69].  KPNV has no agent for process in the United States and maintains no independent offices, operational facilities, or manufacturing plants in this country.

Despite this, Plaintiffs argue that KPNV has directly and independently availed itself of Kentucky law.  They identify several sources that they contend support personal jurisdiction.

---

[1] In separate orders, the Court granted Plaintiffs' Motion for Leave to Amend the Complaint in *Modern Holdings* and granted the same motion in part in *Cox*.  [*Modern Holdings*, R. 107; *Cox*, R.70].  For the reasons set forth in those orders, throughout this opinion, the Court refers to the Second Amended Class Action Complaint from *Modern Holdings* and the Tendered Second Amended Class Action Complaint from *Cox*.

[2] In 2013, Philips Electronics sold the Facility back to Corning, which had initially built, owned, and operated the property from 1952 to 1983. [*Modern Holdings*, R. 108 at ¶ 31-33; *Cox*, R. 63-1 at ¶ 30-31].

For long arm jurisdiction on the basis of property ownership, they cite a 2008 Kentucky Department of Environmental Protection (DEP), Division of Waste Management form listing "Royal Philips Electronics" (KPNV's trade name) as the "legal owner of generator" and "legal landowner of generator" for the Danville plant.  [*Modern Holdings*, R. 55-3; *Cox*, R. 23-1]. They point to a document obtained through an open records request from the Kentucky DEP, which references a corporate guaranty made by KPNV on behalf of Philips Electronics for certain hazardous waste insurance coverage.  [*Modern Holdings*, R. 55-4; *Cox*, R. 23-2].  As evidence that KPNV derives substantial revenue from Kentucky, they quote KPNV's self-description in an SEC filing, which states that the company "posted sales of EUR 24.8 billion and employs approximately 116,000 employees with sales and services in more than 100 countries."  [*Modern Holdings*, R. 55-6; *Cox*, R. 23-4].  They note that KPNV also owns subsidiaries called Project Realty, LLC and ARCADIS, which respectively handled real estate and environmental consulting matters at the Facility after its closure in February 2011.  [*Modern Holdings*, R. 55-5; *Cox*, R. 23-3].

Both parties have offered evidence relating to the extent of KPNV's oversight over Philips Electronics.  Plaintiffs introduced evidence that Cees Burger, a Netherlands-based marketing and procurement manager for Philips Lighting, B.V.,[3] attended a meeting in Danville in late 2011.  [Hr'g Tr. 103, 102-05, 134, *Modern Holdings*, R. 105, *Cox*, R. 69].  This meeting related to a bid by NeoStar Glass, LLC for the purchase of the Facility site, a proposed supply agreement between NeoStar and Philips Electronics and, as a potential term of the proposed sale,

---

[3] [Hr'g Tr. 103, 117, *Modern Holdings*, R. 105, *Cox*, R. 69]. Although the transcript reads "Philips Lighting, P.V.," no such entity is listed on KPNV's SEC Form 20-F [*Modern Holdings*, R. 55-6; *Cox*, R. 23-4]. It appears that the entity to which witness Dean Weeks was referring was "Philips Lighting, B.V.," a subsidiary of KPNV based in the Netherlands. [*Id.* at 9].

environmental remediation responsibilities on the site.  [Harris Dep. at 16:3-17:14, *Modern Holdings*, R. 100, *Cox*, R. 64; *see also* Hr'g Tr. 102-05, *Modern Holdings*, R. 105, *Cox*, R. 69]. Plaintiffs offered testimony from Dr. Scott Harris and Keith Spencer, who attended the meeting as environmental consultants for NeoStar Glass and stated that, in their observation, it appeared that Mr. Burger was the ultimate decision-maker on the sale.  [Hr'g Tr. 39, *Modern Holdings*, R. 105, *Cox*, R. 69; Harris Depo. 44:8, *Modern Holdings*, R. 100, *Cox*, R. 64].

Plaintiffs also offered testimony from former plant employees.  Elbert Cox, Jr. and Ronald Bennett, former employees and union leaders at the Danville plant, testified that during negotiations for severance packages just prior to the plant's closure in 2011, human resources employees for Philips Electronics stated that they needed permission from managers "from the Netherlands" before certain pension payments could be paid to a handful of employees who would otherwise be months shy of eligibility.  [*Id.* at 75; *see also id.* at 62-63, 82].  Mr. Bennett also testified that representatives "out of the Netherlands" visited on two occasions for technical training on certain glass pressware equipment.  [*Id.* at 77].  Plaintiffs also submitted an affidavit from Anna Broughton, the owner of NeoStar Glass.  [Broughton Aff., *Modern Holdings*, R. 55-8, *Cox*, R. 23-6].  She testified that KPNV approved budgets for Philips Electronics and visited the Facility to give "advice and assistance regarding disposal of Hazardous Substances."  [*Id.* at ¶ 2].

Finally, Plaintiffs rely on an affidavit from Katherine Reid, which is the subject of a motion to strike and several objections. In the affidavit, Ms. Reid, a paralegal to Plaintiffs' counsel, relays a conversation she had with Paul Walitsky, a former employee of Philips

Lighting Company.[4]  [Reid Aff., *Modern Holdings*, R. 55-7, *Cox*, R. 23-5].  Reid states that Walitsky told her that he reported "to Holland," that KPNV knew about a lead contamination incident with the Facility's roof, and that KPNV approved budgets for environmental clean-ups.  [*Id.* at ¶¶ 5, 7, 9].  KPNV also submitted an affidavit from Walitsky refuting these statements.  [Walitsky Aff., *Modern Holdings*, R. 59-3; *Cox*, R. 26-3].

KPNV offered evidence that the bulk of Philips Electronics' activities were overseen by Philips Electronics upper management or Philips Lighting Company – not by KPNV itself.  In the normal course of business, the plant manager at the Danville Facility reported to Philips Lighting Company in New Jersey.  [Hr'g Tr. 95-102, 105, *Modern Holdings*, R. 105, *Cox*, R. 69; Winkler Decl. ¶¶ 2-3, *Modern Holdings*, R. 59-2, *Cox*, R. 26-2].  Dean Weeks, a former Danville Plant Manager and the current Senior Project Manager for Environmental Affairs with Philips Electronics,[5] testified that only significant capital expenditures (over at least $2 million) required approval from management in the Netherlands; otherwise, most capital expenditure projects were approved by Philips Lighting Company.  [Hr'g Tr. 99-101, 105, *Modern Holdings*, R. 105, *Cox*, R. 69].  Mr. Weeks testified that, during his tenure as Plant Manager from 1983 to 2000, he never submitted any capital expenditure proposal to KPNV.  [*Id.* at 100].  Weeks testified that the environmental affairs at the Danville facility were "always handled locally," [*id.* at 97], but for certain matters beyond the capabilities of the local office, the final decision-makers regarding environmental matters for the Danville Facility, as well as the proposed NeoStar Glass sale, were the regional vice-president of environmental affairs and the regional director for real estate, both

---

[4] Philips Lighting Company is a division of Philips Electronics based in Somerset, New Jersey.  [Hr'g Tr. 94, 143-44, *Modern Holdings*, R. 105, *Cox*, R. 69].

[5] [Hr'g Tr. 94, *Modern Holdings*, R. 105, *Cox*, R. 69].  Mr. Weeks also served as Director of Operations at Philips Lighting Company in New Jersey from 2001 to 2009. [*Id.*]

of whom are located in Philips Electronics' Andover, Massachusetts office.  [*Id.* at 98-99, 104].

## II

In reviewing a 12(b)(2) motion, a court has three options in its discretion: "(1) the court can decide the motion upon the affidavits alone; (2) the court can permit discovery to decide the motion; or (3) the court can conduct an evidentiary hearing to resolve any factual disputes." *Serras v. First Tennessee Bank Nat. Assn.,* 875 F.2d 1212, 1214 (6th Cir. 1989) (internal quotation marks and citations omitted); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (noting that a court may, in its discretion, "hold an evidentiary hearing if [the party seeking dismissal] disputes the plaintiff's factual assertions").  In each scenario, "plaintiffs bear the burden of satisfying the constitutional and statutory prerequisites for the exercise of jurisdiction."  *Bradley v. Mayo Found*., 1999 U.S. Dist. LEXIS 17505, 17-18, 1999 WL 1032806 (E.D. Ky. Aug. 10, 1999) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261 (6th Cir. 1996)). )).  When the court conducts an evidentiary hearing, as here, "the plaintiff must prove jurisdiction by a preponderance of the evidence."  *Long John Silver's, Inc. v. Diwa III, Inc*., 650 F. Supp. 2d 612, 619 (E.D. Ky. 2009) (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

## A

Before undertaking the jurisdictional analysis, a number of evidentiary issues that arose during the briefing period and at the hearing must be addressed.  In both *Modern Holdings* and *Cox*, Plaintiffs attached to their Responses affidavits and other documents in support of their argument that KPNV had "continuing and extensive contacts" in Kentucky.  [*Modern Holdings*, Pl.'s Resp., R. 63 at 1].  At the center of the dispute is the affidavit of Katherine Reid, which relays a phone conversation she had with former Philips Lighting Company employee Paul

Walitsky regarding KPNV's oversight activities.  [*Modern Holdings*, R. 55-7, *Cox*, R. 23-5].

Plaintiff offered this affidavit as proof that KPNV maintains or engaged in continuous activity in

Kentucky.  KPNV moved to strike the affidavit as inadmissible hearsay, [*Modern Holdings*, R.

61; *Cox*, R. 28], and provided an affidavit from Walitsky himself refuting the statements

attributed to him in the Reid Affidavit.  [*Modern Holdings*, R. 59-3, R. 61-2; *Cox*, R. 26-3, R.

28-2].

Plaintiffs argued that the Reid Affidavit was admissible and, purporting to rehabilitate

Reid's credibility, they submitted an internal office memorandum written by Reid to Plaintiffs'

counsel.  [*Modern Holdings*, R. 65; *Cox*, R. 32].  This memo is nearly identical in content to the

affidavit.  Plaintiffs moved for leave to seal this document, claiming that it was privileged.

[*Modern Holdings*, R. 64; *Cox*, R. 31].  KPNV objected to Plaintiff's motion to seal.  [*Modern

Holdings*, R. 69; *Cox*, R. 34].  It argued that Plaintiffs had waived any privilege because they had

not filed the document in camera with the Court, but instead had voluntarily served the memo to

opposing counsel along with their Response to the Motion to Strike.

The Federal Rules of Civil Procedure are silent regarding the use of affidavits in the

context of a Rule 12(b) motion to dismiss. However, several sister courts have held that the

standard expressly prescribed in Rule 56(b) applies equally to affidavits submitted in a 12(b)

motion to dismiss.  *Pixler v. Huff*, 2011 U.S. Dist. LEXIS 133185, *12, 2011 WL 5597327

(W.D. Ky. Nov. 16, 2011) ("The Court sees no reason why an affidavit or declaration submitted

in connection with a motion to dismiss under Rule 12(b)(2) should be treated any differently

[from one submitted in a summary judgment motion under Rule 56]."); *Churchill Downs, Inc. v.

NLR Entm't, LLC*, 2014 U.S. Dist. LEXIS 71672, *6-7 (W.D. Ky. May 27, 2011); *accord United

Tech. Corp. v. Mazer*, 556 F.3d 1260, 1277 (11th Cir. 2009). Rule 56, in turn, requires that "[a]n

affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A party offering an affidavit for a 12(b) motion, then, must demonstrate that it complies with the Federal Rules of Evidence. *Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 at *6-7; *cf. Sperle v. Mich. Dep't of Corr.,* 297 F.3d 483, 495 (6th Cir. 2002). "Hearsay evidence . . . must be disregarded." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007).

Hearsay is a statement made by an out-of-court declarant, offered for the purpose of proving the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is, of course, generally not admissible in evidence, Fed. R. Evid. 802, unless it is covered by some exception or constitutes "non-hearsay" within the meaning of Federal Rule of Evidence 801(d). Plaintiffs offer the unsworn, out-of-court statements of Mr. Walitsky contained in the Reid affidavit for proof of their contents, and they rely upon the truth of his statements in their attempt to prove that KPNV maintained continuous contacts within Kentucky. This is hearsay not within any exception. Although the Court cannot formally strike an affidavit within the meaning of Rule 12(f),[6] it will not consider the Reid affidavit in making its 12(b)(2) determination.

As to the internal memorandum and Plaintiffs' motion to seal, the Sixth Circuit has made

---

[6] Federal Rule of Civil Procedure 12(f) allows a court to "order stricken from a *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Id.* (emphasis added). An affidavit is not itself a "pleading" within the meaning of Rule 7(a), so Rule 12(f) cannot be employed to "strike" an affidavit submitted in connection with a Rule 12 motion to dismiss. *See, e.g.*, *Dawson v. City of Kent*, 682 F. Supp. 920 (N.D. Ohio 1988), *aff'd*, 865 F.2d 257 (6th Cir. 1988); *Scott v. Dress Barn*, No. 04-1298, 2006 WL 870684, 2006 U.S. Dist. LEXIS 19501, *2 (W.D. Tenn. Mar. 31, 2006); 61A Am. Jur. 2d Pleading § 452 ("A motion to strike is only appropriately addressed toward matters contained in the pleadings, and affidavits submitted in support of a motion are not within that category."). As such, if a court finds such evidence to be inadmissible, it must instead disregard it rather than "striking" it from the record. *Lombard v. MCI Telcoms. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998); *see also State Mut. Life Assurance Co. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. Mich. 1979) (noting that, in the context of a summary judgment motion, "[a]ffidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded.").

clear that "[the] prevailing rule [is that] disclosure to an adversary, real or potential, forfeits work product protection." *Tenn. Laborers Health & Welfare Fund v. Columbia/Hca Healthcare Corp.*, 293 F.3d 289, 306 n.28 (6th Cir. 2002) (citing *United States v. MIT*, 129 F.3d 681, 687 (1st Cir. 1997)).  By serving the internal memorandum to opposing counsel along with their response, Plaintiffs waived any privilege they might have had.  Accordingly, the motion for leave to seal, [*Modern Holdings*, R. 61; *Cox*, R. 38], will be denied.  Because the nearly identical contents of the memorandum are also hearsay, the Court will disregard it in deciding the instant motion to dismiss.

B

Kentucky recently clarified that the scope of the state's long arm statute is not co-extensive with the scope of federal due process.  *Caesar's Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011); *see also Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 at *15.  As such, jurisdiction must comport with both the long arm statute and federal due process, requiring a two-step analysis.  *See Caesar's*, 336 S.W.3d at 58.  If the jurisdictional predicate in the long arm statute is not satisfied, personal jurisdiction may not be exercised.  *Id.* at 57.  If, on the other hand, the statutory basis for jurisdiction is met, then the court must engage in the second step of analysis: assessing whether exercising personal jurisdiction over the defendant comports with federal due process.  *Id.*

1

KPNV's status as a parent corporation gives rise to special considerations in the personal jurisdiction analysis.  It is well established in this circuit that the mere ownership by a foreign parent company of an in-state subsidiary "does not in itself subject the parent to the jurisdiction of such courts."  *Miller v. Trans World Airlines, Inc.*, 302 F. Supp. 174, 178 (E.D. Ky. 1969); *see*

10

also, e.g., *Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008);

*Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 297 (6th Cir. 1964).  In the

absence of an alter-ego relationship,[7] personal jurisdiction is proper only if a parent corporation

directly – rather than vicariously – maintains contacts and activities within the forum.  *E.g.*,

*Hyland v. Homeservices of Am., Inc.*, 2007 U.S. Dist. LEXIS 47990 (W.D. Ky. 2007) ("Courts

must look at what the parent has done, not the subsidiary.").  Ownership of a subsidiary in the

forum is one relevant contact in the analysis, but it is not sufficient on its own to confer personal

jurisdiction.  *Martin v. S. Ind. Treatment Ctr., Inc*., 2004 U.S. Dist. LEXIS 15293, 6, 2004 WL

2595946 (W.D. Ky. May 27, 2004) (citing *Velandra*, 336 F.2d at 297).  As such, Plaintiffs must

demonstrate that KPNV, *on its own*, maintains sufficient contacts with Kentucky so as to satisfy

the requirements of personal jurisdiction.

In order to satisfy Kentucky's long arm statute, Kentucky Revised Statute (KRS) §

454.210(2)(a), a plaintiff must show that "(1) [the defendant's] conduct falls under a statutory

category identified in KRS § 454.210(2)(a), and (2) [the plaintiff's] claim 'arises from' that

statutory provision."  *Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 at *15 (citing *Caesar's*,

336 S.W.3d at 58).  In relevant part, the long arm statute provides for personal jurisdiction over

an out-of-state person when a claim "arises from" the following distinct instances:

(1) Transacting business in this Commonwealth;

. . .

---

[7] The narrow exception to the general rule from *Miller* arises where the plaintiff can establish that "the corporate separateness is fictitious, that the parent has held the subsidiary out as its agent, or that the parent has exercised an undue degree of control over the subsidiary."  *Miller*, 302 F. Supp. at 178.  When present, these criteria demonstrate that the parent is a mere "alter-ego" of the subsidiary, and a court is permitted "to 'pierce the corporate veil' of the subsidiary and impute personal jurisdiction from the subsidiary to the parent."  *Thomson*, 545 F.3d at 362 (6th Cir. 2008) (citing *Invacare Corp. v. Sunrise Med. Holdings, Inc.*, 2004 WL 3403352, at *7, 2004 U.S. Dist. LEXIS 28169 (N.D. Ohio Dec. 15, 2004)).  Here, Plaintiffs have made no argument that Philips Electronics is merely KPNV's alter-ego. Instead, they argue that KPNV itself has sufficient, direct contacts in Kentucky to justify the exercise of personal jurisdiction.

(4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth; [and]

. . .

(6) Having an interest in or possessing real property in this Commonwealth, providing the claim arises from the interest in, use of, or possession of the real property . . . .

KRS § 454.210(2)(a); *Hinners v. Robey*, 336 S.W.3d 891 (Ky. 2011).  A claim "arises from" such conduct when there is a "reasonable and direct nexus" between the conduct causing injury and the defendant's activities in the state.  *Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 at *15 (citing *Caesar's*, 336 S.W.3d at 59).

a

Plaintiffs first argue that KPNV's conduct falls within the "transacting business" category in KRS § 454.210(1).  Few Kentucky courts have assessed what constitutes "transacting business" since the Kentucky Supreme Court's decision in *Caesar's*, and no court has yet interpreted this jurisdictional basis in the context of a parent-subsidiary relationship.  *See Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 at *16.

Even before *Caesar's* narrowed the scope of Kentucky's long arm statute, however, Kentucky courts have required a course of direct, affirmative actions within a forum that result in or solicit a business transaction.  *E.g.*, *Caesar's*, 336 S.W.3d at 58 (holding that casino was "transacting business" within the Commonwealth since it not only engaged in direct marketing activities in Kentucky, but also derived fifty percent of its revenue from Kentucky residents); *Intercargo Ins. Co. v. B. W. Farrell, Inc.*, 89 S.W.3d 422, 427 (Ky. Ct. App. 2002) (holding that, although the parent-subsidiary relationship by itself was not enough to establish personal

jurisdiction over an out-of-state subsidiary defendant, the subsidiary had affirmatively availed itself of Kentucky law when it entered an indemnity contract executed in Kentucky); *Ford v. RDI/Caesar's Riverboat Casino, LLC*, 503 F. Supp. 2d 839, 841-43 (W.D. Ky. 2007) (finding that the defendant transacted business in Kentucky where roughly half of its customers were from Kentucky, it derived substantial revenue—in excess of $109 million—from Kentucky residents, and it actively solicited business and engaged in charitable activities in Kentucky). Isolated actions are insufficient. *Compare Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 *19-20 (one isolated contract insufficient), *with KFC Corp. v. Wagstaff*, 2013 U.S. Dist. LEXIS 86758, *27, 2013 WL 3166165 (W.D. Ky. 2013) (numerous long-term contracts with Kentucky-based franchisor were sufficient).

Plaintiffs have not shown that KPNV has independently "transacted business" in Kentucky.  KPNV is incorporated in the Netherlands and has no agent for service of process here.  There is no evidence that KPNV has any offices, employees, or manufacturing facilities of its own here in Kentucky, nor that KPNV is or has ever been licensed to do business in the Commonwealth.  The most that could be said is that KPNV "does business" in Kentucky *indirectly* through its subsidiary.  But, as noted above, the actions of a subsidiary within a forum cannot be imputed to a foreign parent corporation in order to establish jurisdiction. *E.g.*, *Velandra*, 336 F.2d at 297; *Thomson*, 545 F.3d at 362.  Contrary to Plaintiffs' contentions, the same conclusion also applies to the in-state actions of related entities Project Realty, LLC and ARCADIS. *See id.*

Plaintiffs rely on the meeting with Mr. Burger as evidence that KPNV conducted business here. This might appear to establish one contact here in Kentucky – except Mr. Burger was not a KPNV agent or representative.  Rather, according to the uncontroverted testimony of

Mr. Weeks (a Philips Electronics senior level manager), Mr. Burger was a representative of Philips Lighting, B.V. who was based in the Netherlands.  [Hr'g Tr. 103, 117, 134, *Modern Holdings*, R. 105, *Cox*, R. 69].  The meeting, moreover, related to an offer of sale and supply contract with Philips Electronics – not with KPNV.  [*Id.* at 102-05, 127-28, 135].  Philips Lighting, B.V. is a distinct corporate entity from KPNV.  [*See id.* at 117; R. 55-6 at 9].  This contact by a Dutch employee of another subsidiary has no bearing on KPNV's purposeful availment in Kentucky.

Plaintiffs also argue that KPNV's corporate guaranty on behalf of Philips Electronics is a relevant forum contact.  At best, this contractual guaranty might constitute one contact, but it is not enough to warrant the exercise of personal jurisdiction over KPNV here.  Kentucky courts have long held that isolated contracts are insufficient to establish jurisdiction.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) ("[T]he mere existence of a contract . . . is insufficient to confer personal jurisdiction over [a non-resident defendant]."); *Churchill Downs*, 2014 U.S. Dist. LEXIS 71672 at *18 ("Even before *Caesar's* interpreted Kentucky's long-arm statute more conservatively, a contract with a Kentucky company did not alone support the exercise of jurisdiction over a non-resident Defendant.").

Even if these two contacts were sufficient, Plaintiffs still could not satisfy the second prong of Kentucky's long arm analysis.  When it clarified the scope of the Kentucky Long Arm Statute in *Caesar's*, the Kentucky Supreme Court also adopted a fairly narrow interpretation of the "arising out of" prong.  *Caesar's*, 336 S.W.3d at 57-59.  There, the Court concluded that Caesar's, a riverboat casino on the Indiana side of the Ohio River, had "transacted business" in Kentucky within the meaning of the long arm statute.  *Id.* at 57-58.  This was because the company had engaged in direct marketing campaigns through mail, television ads, and billboards

in Kentucky, and because it derived over fifty percent of its revenue from Kentucky residents. Nonetheless, the Court held that long arm jurisdiction was not proper because the type of harm experienced by the plaintiff – a personal injury from a slip and fall – did not "arise out of" the casino's marketing activity in Kentucky. *Id.* at 59.

It cannot be said that the present lawsuit "arises out of" the transaction that was the subject of the Burger meeting or the corporate guaranty. This is not an action arising from the proposed sale and supply agreement with NeoStar Glass. Nor is it a contract-based dispute regarding terms, obligations, or payments under the guaranty. Instead, it is an environmental mass tort suit seeking compensation for personal injuries arising from chemical exposure. These two events cannot establish long arm jurisdiction under the "transacting business" provision.

b

Plaintiffs next suggest that, under KRS § 454.210(4), KPNV "conducted continuous and long-term business activities in the Commonwealth, [and] obtained profits from activities occurring within the Commonwealth . . ." while allegedly causing tortious injury here. [Pls' Resp. Mot. Dismiss, *Modern Holdings*, R. 55 at 23]. This subsection of the long arm statute contemplates, in essence, two situations in which jurisdiction is proper: where the defendant "[r]egularly does or solicits business, or engages in any other persistent course of conduct," or where the defendant "derives substantial revenue from goods used or consumed . . . in this Commonwealth." KRS § 454.210(4).

Plaintiffs argue that KPNV's oversight of the Facility's environmental and safety activities constitutes "regular business" or a "persistent course of conduct." A review of Kentucky case law demonstrates that the nature and extent of the parent's engagement with the forum state's commerce is the touchstone in this inquiry.

15

A parent-subsidiary relationship – and the typical oversight activity that accompanies such a relationship – is generally not enough to establish personal jurisdiction over a foreign parent. *Miller*, 302 F. Supp. at 178; *In re Lupron Mktg. & Sales Practices Litig*., 245 F. Supp. 2d 280, 291-292, 2003 U.S. Dist. LEXIS 907, 29 (D. Mass. 2003) (citations omitted) ("[J]urisdiction has been premised on a finding of control – not merely the degree of control innately inherent in the family relationship, but the exercise of control by the parent 'greater than that normally associated with common ownership and directorship.'"); *cf. United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (internal citations and quotation marks omitted) (noting that, in the analogous context of CERCLA's derivative liability provisions, "[a]ctivities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability. . . . The critical question is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility.").

For instance, in *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273-74 (6th Cir. 1998), an out-of-state holding company held a controlling interest in Motel 6 Operating, which operated the Richmond, Kentucky Motel 6 in which the plaintiff was injured.   The Sixth Circuit found that, despite the "integrated business relationship" between the two entities, there was no evidence that the parent was involved in the daily operation of the Richmond Motel 6, "'did business' in Kentucky, or took *any* affirmative actions relating to Kentucky beyond merely owning (with a minority interest) Motel 6 Operating."  *Id.* at 1274 (emphasis in original); *see also, e.g.*, *Hyland*, 2007 U.S. Dist. LEXIS 47990 at *21 (emphasis added) ("Plaintiffs failed to

identify any aspects of the *daily involvement* of [the parent-investor company] in running [the in-state subsidiary], nor have they cited any specific conduct taken by [the parent] that could be interpreted as controlling the operations of [the subsidiary]"); *Martin*, 2004 U.S. Dist. LEXIS 15293 (finding that, despite intermingling of corporate officers, plaintiffs had failed to show any "regular solicitation of business" where there was no direct action by the parent, and the only interrelationship between the two companies was that the parent owned the subsidiary's operational manual and the parent's attorneys prepared discovery requests); *KASP, Inc. v. Adesa Lexington, LLC*, 2006 U.S. Dist. LEXIS 6372, *34 (E.D. Ky. Feb. 17, 2006) (citing *Martin*, 2004 U.S. Dist. LEXIS 15293) (even though parent audited subsidiary and authorized deals by the subsidiary, no personal jurisdiction since relationship was like that in *Martin*).

On the other hand, affirmative activity in the forum and a high level of involvement in the subsidiary's daily operations can warrant personal jurisdiction.  For instance, in *Audiovox Corp. v. Moody*, 737 S.W.2d 468, 470 (Ky. Ct. App. 1987), the foreign parent company managed the day-to-day operations of the subsidiary, including "selling supplies, managing its accounts receivable and payable, approving employee raises, managing the insurance and payroll, conducting audits, and hiring branch managers." *Id.* at 470.  Not only that, but the corporate officers of parent and subsidiary were identical with one exception.  The Kentucky Court of Appeals found that, given this high degree of control of the subsidiary within the forum, long arm jurisdiction over the parent was satisfied.  *Id.*; *cf. Third Nat'l Bank v. Wedge Group, Inc*., 882 F.2d 1087, 1090 (6th Cir. 1989) (holding that, in a suit enforcing a loan agreement, a foreign parent company had purposefully availed itself of Tennessee law for purposes of federal due process where the parent negotiated and helped induce a loan from a Tennessee bank for its Tennessee subsidiary, and entered into its own contract with that bank).

17

Plaintiffs have simply not shown that KPNV's involvement and oversight over Philips Electronics rises to this level.  Unlike the parent corporation in *Audiovox*, which oversaw the day-to-day functions of its subsidiary, down to payroll, hiring, and bookkeeping, KPNV is not involved in the daily business operations of its subsidiaries and has exerted only minimal control over Philips Electronics.   At most, the evidence demonstrates that KPNV retains authority over high-dollar capital expenditure approvals, technical equipment training, and approval of extraordinary pension payments.[8]  [Hr'g Tr. 62-63, 77, 99-101, 105; *Modern Holdings*, R. 105, *Cox*, R. 69].  But these activities are merely indicative of an ordinary parent or holding company relationship.  *E.g.*, *Martin*, 2004 U.S. Dist. LEXIS 15293 (finding no personal jurisdiction where parent simply owned the subsidiary's operational manual and parent's attorneys prepared discovery requests).  Without any evidence of daily involvement or a high degree of oversight, much less direct business activity in the forum, it cannot be said that KPNV has engaged in "regular business" or a "persistent course of conduct" in Kentucky.  Plaintiffs have not shown that jurisdiction is warranted on this basis.

Next, in support of their contention that KPNV derives substantial revenue from Kentucky, Plaintiffs point to a statement in an SEC filing under the heading "About Royal Philips Electronics," which states KPNV's annual sales figures "in more than 100 countries" and touts its work as a "leader in . . . energy efficient lighting solutions and new lighting applications."  [SEC Form 20-F, *Modern Holdings*, R. 55-6 at 12; *Cox*, R. 23-4 at 12].  Because the Facility manufactured glass used in lighting products sold by Philips Electronics, and because

---

[8] The Court notes that Plaintiffs have not shown that approval of pension payments to otherwise ineligible Danville workers was handled by KPNV. Rather, the evidence only shows that it had to be approved by "higher-ups in Holland."  [Hr'g Tr. at 59, 60, 71].  Other entities, including Philips Lighting, B.V., have offices and personnel in the Netherlands.  [*See* Hr'g Tr. 103; SEC Form 20-F, *Modern Holdings*, R. 55-6; *Cox*, R. 23-4].

18

KPNV owns Philips Electronics, Plaintiffs surmise that KPNV "profited directly from the manufacturing operations at the Facility."  [Pls' Resp., *Modern Holdings*, R. 55 at 20].

It would be patently unreasonable to infer from this SEC self-description alone that KPNV – a worldwide corporation with literally hundreds of subsidiaries engaged in diverse fields – derives substantial revenue from Kentucky.  *See, e.g.*, *Caesar's*, 336 S.W.3d at 57-58 (finding long arm jurisdiction proper where the casino derived fifty percent of its revenue from Kentuckians).  Moreover, in the absence of an alter-ego relationship, "the mere ownership by a corporation of all of the stock of a subsidiary amenable to the jurisdiction of a state's courts" – and the profits incidental to such ownership –  "do[] not in [themselves] subject the parent to the jurisdiction of such courts."  *Miller*, 302 F. Supp. at 178 (citations omitted); *see also Ergo Licensing, LLC v. Cardinal Health, Inc.*, 2009 U.S. Dist. LEXIS 61520, 17, 2009 WL 2021926 (D. Me. July 13, 2009) (citations omitted) ("[F]inancial benefits accruing to a corporate parent from a subsidiary's relationship to the forum state will not support the exercise of jurisdiction over the parent in that forum if the parent does not itself have a 'constitutionally cognizable contact' with that forum state.").  Personal jurisdiction is not warranted on this basis.

c

Finally, in an attempt to satisfy the property basis for long arm jurisdiction in KRS § 454.210(6), Plaintiffs seize on a reference to KPNV as the "legal owner of generator" on a Kentucky Division of Waste Management form.  Plaintiffs' own complaint, however, belies this contention: it alleges that Philips Electronics – not KPNV – purchased the Facility in 1983 and owned it until 2013.  [*Modern Holdings*, R. 108 at ¶ 32-33; *Cox*, R. 63-1 at ¶ 30-31].  At most, this reference – which, under relevant environmental regulations, merely identifies the owner of

the "person [i.e., entity]. . . whose act or process produces [certain types of] hazardous waste"[9] – simply reiterates that KPNV is the corporate owner of Philips Electronics. This form is not indicative of title to property, and it is insufficient to establish this jurisdictional basis under the Kentucky Long Arm statute.

In summary, "[w]hen a defendant does not regularly do or solicit business in Kentucky, does not derive substantial revenue from goods used or consumed in Kentucky, and when any injury in Kentucky did not arise out of doing or soliciting business in Kentucky, Kentucky courts simply do not have jurisdiction over the defendant." *Martin*, 2004 WL 2595946 at *2 n.4 (citing *Jackson v. Wileman,* 468 F. Supp. 822 (W.D.Ky. 1979)).[10]  Plaintiffs have not shown that long arm jurisdiction over KPNV is proper under any part of the statute. As such, the Court need not consider whether the exercise of jurisdiction comports with federal due process. Having failed to establish any basis under which this Court may properly exercise jurisdiction over KPNV, the Court will grant KPNV's motions to dismiss in both cases.

---

[9] 40 C.F.R. § 260.10 (defining "generator").

[10] Although the Plaintiffs had the opportunity to do so, no itemization of cases in which KPNV has been subjected to personal jurisdiction within the United States has been forthcoming. In fact, at least two federal courts declined to exercise personal jurisdiction over KPNV in similar factual scenarios. *E.g.*, *Coe v. Philips Oral Healthcare, Inc*., 2014 U.S. Dist. LEXIS 19186, *14 (W.D. Wash. Feb. 14, 2014) (finding that plaintiffs had failed to make a prima facie case for personal jurisdiction, since KPNV had no contacts with Washington and it had "no role in the daily running of [subsidiary] Philips Oral Healthcare"); *Ferrigno v. Philips Elecs. N. Am. Corp*., 2010 U.S. Dist. LEXIS 59036, *8-10 (N.D. Cal. June 1, 2010) (finding that KPNV had insufficient contacts with California and refusing to impute its subsidiary's activities to it for jurisdictional purposes, since there was no showing of an alter ego relationship). These cases are not dispositive on this fact sensitive issue, but they further persuade the Court that the exercise of long arm jurisdiction is not warranted on these facts. *But see Vodopia v. Koninklijke Philips Elecs., N.V*., 398 Fed. App'x 659, 661 (2d Cir. 2010) (unpublished). In *Vodopia*, the trial court had apparently not addressed the issue of personal jurisdiction, but dismissed the entire action for failure to state a claim. For jurisdictional purposes on appeal, the Second Circuit accepted the complaint's unchallenged allegations that KPNV "conducts business in the state of New York" as its basis for personal jurisdiction. *Id.* at 660. It also affirmed the trial court's 12(b)(6) dismissal of the complaint as against all defendants. Because "the district court did not directly address the issue" of personal jurisdiction, the authoritative weight of this case is questionable. *Id*. *But see also Vichi v. Koninklijke Philips Elecs. N.V.,* 2009 Del. Ch. LEXIS 209, 6, 2009 WL 4345724 (Del. Ch. Dec. 1, 2009) (exercising jurisdiction over KPNV in a breach of contract and fraud claim arising out of a contract a Delaware subsidiary of KPNV, where the plaintiff contended that the act of incorporation in Delaware was part of the fraudulent scheme).

III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

1. In *Modern Holdings, et al. v. Corning Incorporated, et al.*, No. 13-cv-405-GFVT, it is

   hereby **ORDERED** as follows:

   a. KPNV's Motion to Dismiss for Lack of Personal Jurisdiction [R. 50] is

      **GRANTED**;

   b. Plaintiffs' claims against KPNV are **DISMISSED WITHOUT**

      **PREJUDICE**;

   c. KPNV's Motion to Strike [R. 61] is **DENIED**; and

   d. Plaintiffs' Motion to Seal a Document [R. 64] is **DENIED**.

2. In *Cox, et al. v. Philips Electronics North America Corp., et al.*, No. 13-cv-406-

   GFVT, it is hereby **ORDERED** as follows:

   a. KPNV's Motion to Dismiss for Lack of Personal Jurisdiction [R. 20] is

      **GRANTED**;

   b. Plaintiffs' claims against KPNV are **DISMISSED WITHOUT**

      **PREJUDICE**;

   c. KPNV's Motion to Strike [R. 28] is **DENIED**;

   d. Plaintiffs' Motion to Seal a Document [R. 31] is **DENIED**; and

   e. Plaintiffs' Motion for Leave to file a Sur-Reply [R. 29] is **GRANTED**.

This the 31st day of March, 2015.



Signed By:

*Gregory F. Van Tatenhove*

United States District Judge