UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ELBERT COX, JR., CECIL WAYNE FRANKLIN, JOHN SPEARS, WANDA BEASLEY, DONALD KING, LINDSEY PENNINGTON, TERESA PRESTON, | ) ) ) ) ) | Civil No. 13-406-GFVT |
| and | ) ) | |
| BEVERLY PRESLEY, Personal Representative of the Estate of Annabell Gordon, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, | ) ) ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Defendant Philips Electronics' Motion for Reconsideration of a portion of the Court's March 31, 2015 Memorandum Opinion and Order. [R. 77]. Upon careful review of the briefs and the Tendered Second Amended Class Action Complaint at issue in the motion to dismiss, and for the reasons set forth below, the Court finds the motion to be well-taken. Accordingly, the Court will GRANT Philips' motion, WITHDRAW IN PART the March 31, 2015 Memorandum Opinion and Order to the extent of the discussion and conclusions in Part II(C)(2) relating to Plaintiffs' fraud and fraudulent concealment claims, and DISMISS those claims.

I

The general facts surrounding this putative class action suit have been thoroughly outlined in prior orders. [R. 70, 71]. Plaintiffs, former employees at a glass manufacturing facility in Danville, Kentucky, brought this action against their former employer, Philips, for injuries that allegedly arose from exposure to hazardous chemicals in their workplace. In all, Plaintiffs' Tendered Second Amended Class Action Complaint[1] set forth claims for "deliberate intention," negligence, strict liability, negligent infliction of emotional distress, fraudulent concealment, fraud, and "medical monitoring." [Tendered Second Am. Class Action Compl., R. 63-1]. Most of Plaintiffs' claims alleged that Philips deliberately and intentionally violated safety regulations and exposed them to hazardous chemicals, causing them physical injury and emotional distress. [*Id.* at ¶¶ 143-48]. In their fraud and fraudulent concealment claims, which are relevant here, [*id.* at ¶¶ 174-86], Plaintiffs allege that Philips "intentionally and actively concealed" or affirmatively misrepresented information about the extent of the toxic contamination in their workplace, the receipt of OSHA citations, and the risks associated with exposure to the substances present in the Facility. [*Id.* at ¶¶ 81, 73-87]. They also allege that Philips intentionally misrepresented and falsely assured employees about the risks of chemical exposure. [*Id.* at ¶¶ 81-83]. After certain Plaintiffs received blood test results indicating elevated levels of lead in their systems, the complaint alleges, Philips induced the employees not to seek treatment, but instead told them they were safe to return to work. [*Id.* at ¶¶ 76-78].

---

[1] In conformity with the Court's March 31 Order, [R. 70], Plaintiffs have filed a revised Second Amended Class Action Complaint [R.76] omitting references to dismissed defendant KPNV and removing dismissed claims. For the reasons set forth in the March 31 Opinion, their Tendered Second Amended Class Action Complaint [R. 63-1] was the version at issue in the motion to dismiss that is the subject of the instant motion for reconsideration, [*see* R. 70 at 5-7]. The Court therefore considers the allegations in the Tendered Second Amended Class Action Complaint here.

Philips moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [R. 13].  The Court heard oral argument on February 9, 2015, [R. 50], and in a Memorandum Opinion and Order issued on March 31, 2015, this Court granted the motion in part and denied it in part, [R. 70].  The Court first concluded that Plaintiffs' claims for "deliberate intention" and negligence, gross negligence, and recklessness were barred by the exclusive remedy provision of the Kentucky Workers' Compensation Act, since it could not be reasonably inferred from the complaint that Philips maintained an unsafe workplace because it "harbored a specific, deliberate intent to cause harm to the Plaintiffs."  [R. 70 at 11].  The Court went on to conclude that Plaintiffs' fraud and fraudulent concealment claims were not precluded by the exclusive remedy provision because they had pled sufficient facts to "make it at least plausible that Philips specifically intended to cause harm to the plaintiffs by withholding, concealing, or misrepresenting this information."  [*Id.* at 17].  Plaintiffs' remaining claims for strict liability, medical monitoring, negligent infliction of emotional distress, and a proposed negligence per se claim were also dismissed.  [*Id.* at 16-17].

Philips timely filed the instant motion for reconsideration of the Court's decision as to the fraud and fraudulent concealment claims.  Since that time, Philips filed a Second Motion to Dismiss Plaintiffs' Second Amended Complaint, [R. 78], and Plaintiffs filed a motion to file a Third Amended Complaint, [R. 80], which Philips opposes.

II

Philips brought its motion under Rule 60(b).  [R. 77].  Because the March 31, 2015 Opinion did not dispose of all of Plaintiffs' claims, however, it was not a final appealable judgment as required for reconsideration under that rule.  *See, e.g.*, *Dassault Systemes, S.A. v. Childress*, 663 F.3d 832, 840 (6th Cir. 2011).  However, "[d]istrict courts have authority under

both common law and Rule 54(b) to consider Motions for Reconsideration on non-final orders before entry of judgment." *Clemons v. Norton Healthcare, Inc. Ret. Plan*, No. 3:08-CV-00069-TBR, 2013 WL 5437646, at *2 (W.D. Ky. Sept. 27, 2013) (citing *Lellanau Wine Cellars Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 946 (6th Cir. 2004) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." (internal quotation marks and citations omitted)); *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)).  A court may reconsider its prior, non-final order "whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Rodriguez*, 89 F. App'x at 959).

Philips contends that, to the extent the Court found that the fraud and fraudulent concealment claims, as intentional tort claims, contained sufficient factual allegations to state a claim that fell within the deliberate intention exception, the March 31, 2015 Memorandum Opinion and Order contained a clear error of law.  Because, Philips argues, stating a claim for an intentional tort does not necessarily mean that one has pleaded a "specific intention to injure the [Philips] employees," *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 616 (6th Cir. 2005), and because it contends Plaintiffs have made no plausible allegation to that effect in their Tendered Second Amended Class Action Complaint, Philips insists that their fraud claims should have been dismissed.  Upon careful review of the briefs and the Tendered Second Amended Class Action Complaint at issue in Philips' motion to dismiss, the Court agrees and finds that *Moore v. Environmental Construction Corp.*, 147 S.W.3d 13 (Ky. 2004) and *Rainer v. Union Carbide*

4

*Corp.*, 402 F.3d 608 (6th Cir. 2005) specifically address this question and require dismissal of Plaintiffs' fraud-related claims.

The Kentucky Workers' Compensation Act, like most workers' compensation statutes, represents a balance of employer and employee interests. The Act "affords an injured worker a remedy without proof of the common law elements of fault." *Cain*, 236 S.W.3d at 606. In exchange for that protection, that remedy is generally "exclusive of the remedies available under common law." *Id.* The Act provides:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . on account of such injury or death.

KRS § 342.690(1). The general rule, then, is that the "Kentucky Workers' Compensation Act preempts common-law tort claims by an employee against his employer." *Casey v. Vanderlande Indus., Inc.*, 2002 WL 1496815, *2 (citing *Hardaway Mgmt. Co. v. Southerland*, 977 S.W.2d 910, 917 (Ky. 1998)).

The exception to that rule is the "deliberate intention exception." The Act provides that an employee may bring a civil tort action against his employer in lieu of accepting recovery under the KWCA *only if* an employee is injured or killed as a result of the "deliberate intention of his or her employer to produce such injury or death." KRS § 342.610(4); *see also* KRS § 342.690(1) (providing that an employer enjoys exemption from liability except in cases "where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director"). As the Court noted in its March 31, 2015 Opinion, this exception is a narrow one. The Kentucky Supreme Court has interpreted the "deliberate intention" to mean that "the employer must have determined to injure the employee and used some means appropriate to that end, and there must be specific intent." *Moore*, 147 S.W.3d at 16

5

(quoting *Fryman v. Elec. Steam Radiator Corp*., 277 S.W.2d 25, 27 (Ky. 1955)); *see also Rainer v. Union Carbide Corp*., 402 F.3d 608, 616 (6th Cir. 2005); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527 (6th Cir. 1999).

The parties disputed whether the fraudulent concealment and fraud claims – intentional tort claims – could survive dismissal and satisfy the deliberate intention exception by virtue of the fact that they allege that Philips engaged in "intentional acts."  [Pl.'s Resp. to Mot. to Dismiss, R. 15 at 23; *id.* at 25 (arguing that "'deliberate intention' must include conduct undertaken with the knowledge that it will produce a certain result.")].  In the March 31, 2015 Opinion, the Court summarized Plaintiffs' allegations that Philips intended to withhold and misrepresent information, and found that they were sufficient to state a claim within the deliberate intent exception:

> At this stage, the Court must accept as true Plaintiffs' allegations that *Philips was aware of the dangerous nature of the substances in the workplace but intentionally withheld that information from plaintiffs; that Philips falsely assured Plaintiffs that exposure was benign; and that Philips' employees affirmatively made false statements about these substances and about working conditions, OSHA violations, or equipment functions. [E.g.*, Tendered Second Am. Class Action Compl., R. 63-1 at ¶¶ 28, 75, 81]. These allegations are sufficient to make it at least plausible that Philips specifically intended to cause harm to the plaintiffs by withholding, concealing, or misrepresenting this information.  At this 12(b)(6) stage, Plaintiffs have alleged enough facts to satisfy the deliberate intention exception, so their fraud and fraudulent concealment claims are not precluded by the KWCA.

[R. 70 at 17 (emphasis added)].

Philips argues in its motion for reconsideration that "simply because a party alleges an intentional tort does not mean that it has alleged enough facts to meet the much higher standard of deliberate intention."  [Def.'s Mot. for Reconsid., R. 77-1 at 5].  In other words – as the Court itself noted during oral argument – intent to act (here, to misrepresent or fail to disclose) is not the same as intent "to produce [the] injury or death" of an employee.  KRS § 342.610(4); [Hr'g

Tr., R. 50 at 70 ln.8-17 ("Intentional actions are not the same, though, as intent to cause injury. You're putting – alleging facts which are not just negligent, they're intentionally misrepresenting something or they're intentionally not, you know, putting an employee in harm's way, but presumably, there are no facts to suggest it was because they were intending to injure that particular employee. . . .")].

This distinction is, indeed, clearly drawn in the case law. The Kentucky Supreme Court has held that a court cannot infer deliberate intent to injure or kill an employee from intent to act. As noted in Part II(C)(1) of the March 31, 2015 Opinion, the Court in *Moore v. Environmental Construction Corp.*, 147 S.W.3d 13 (Ky. 2004), rejected the notion that, as in criminal law, "deliberate intent" might be "inferred because of the direct action [an employer] took." *Id.* at 19. In *Rainer v. Union Carbide*, the Sixth Circuit also thoroughly addressed this precise question in the context of intentional torts. 402 F.3d 608. There, the plaintiffs – all current or former employees – argued that "'deliberate intention' may also include instances where the employer acts with the knowledge that harm might follow." *Id.* at 616. In other words, not unlike Plaintiffs in this case, they argued that proof of intent to act, when the employer knew with substantial certainty what harm might result, was sufficient to satisfy the exception. After surveying state and federal cases that narrowly circumscribed the deliberate intention exception, including *Moore*, the court rejected that argument. Quoting the district court's analysis with approval, the Sixth Circuit specifically explained that "[t]he definition of 'deliberate intent[ion] to produce injury' as used in the [Kentucky Workers' Compensation Act] *is much narrower than 'intent' in general tort law*, where the substantial certainty analysis is proper." *Id.* at 616 (citations omitted) (emphasis added).

A careful review of the Tendered Second Amended Complaint reveals, first, no allegation that Philips specifically intended to injure the Plaintiffs when it allegedly misrepresented or failed to disclose information about the risks and nature of chemicals in the facility.  A number of allegations claim that Philips intended to misrepresent information in order to save money or to induce Plaintiffs to continue working.  [*E.g.*, R. 63-1 at ¶ 82 (alleging that Philips "perpetrated an intentional fraud upon the Plaintiffs by lying and actively concealing and falsely misrepresenting information regarding the dangers of the Plaintiffs' exposure to the Hazardous Substances and the physical illnesses suffered by the Plaintiffs as a result for the purpose of saving money and also for the purpose of inducing Plaintiffs to continue working in the abnormally dangerous conditions"); ¶ 83 (alleging that Philips had a "corporate strategy of knowingly and actively concealing the nature and extent of disease and physical ailments discovered in company physical examinations, reported by employees, or observed by management or environmental health and safety personnel"); ¶¶ 76-78 (alleging that workers with blood tests indicating elevated levels of lead were told to return to work and, in one instance, an employee was "fraudulently assured . . . that returning to [the facility] did not pose a threat to his health or safety"); ¶ 74 (alleging that, when Plaintiffs noted to management that the air tasted "sweet," an indication of lead gas or dust inside the facility, "the workers were falsely told the gas or dust did not pose a threat of physical harm to the workers, and they were told to continue working"); *accord* Pls.' Resp. to Philips' Mot. Reconsid., R. 82 (highlighting the same types of allegations)].  Nor, under the Kentucky Supreme Court's conclusion in *Moore*, can the Court rely on any inference from those allegations to find that the deliberate intention exception is met.  *Moore*, 147 S.W.3d at 19.

Even accepting all of Plaintiffs' allegations in their fraud and fraudulent concealment claims, then, they have only alleged that Philips intended to misrepresent the nature of the hazardous substances in order to induce them to continue working, even though Philips – like the employer in *Moore* – "knew that injury or death could result." *Moore*, 147 S.W.3d at 19. This conduct might satisfy a general tort law standard for intent, *Rainer*, 402 F.3d at 616, and it might be sufficient to state a claim for fraudulent concealment and fraud, but under Kentucky's narrow definition of the deliberate intention exception, it cannot, as a matter of law, constitute "specific intent" to "produce [an employee's] injury or death." KRS § 342.610(4); *Fryman v. Elec. Steam Radiator Corp.*, 277 S.W.2d 25 (Ky. 1955). That is a wholly different proposition, and one that – precisely like the unsafe workplace allegations in their negligence and "deliberate intention" claims, [*see* R. 70 Part II(C)(1)] – is both absent and implausible here. Because Plaintiffs' allegations of intentional actions do not, and cannot, satisfy the exacting deliberate intention exception under Kentucky law, their fraud and fraudulent concealment claims must be dismissed. The conclusion in the March 31, 2015 Opinion that Plaintiffs' fraud-related allegations were sufficient to satisfy the deliberate intention exception was therefore in error and contrary to clear authority set forth in the Kentucky Supreme Court's opinion in *Moore* and direct guidance from the Sixth Circuit in *Rainer*. Since these, the only remaining claims in this action, must be dismissed, this case will be stricken from the docket, and any pending motions will be denied as moot.

III

Accordingly, and for the foregoing reasons, it is hereby **ORDERED** as follows:

1. Philips' Motion for Reconsideration [R. 77] is **GRANTED**;

2. The March 31, 2015 Memorandum Opinion and Order, [R. 70], is **WITHDRAWN IN PART to the extent of its analysis and conclusion in Part II(C)(2) of that Opinion relating to the fraud and fraudulent concealment claims.**

3. Plaintiffs' fraudulent concealment and fraud claims are **DISMISSED with prejudice**;

4. All pending motions are **DENIED as moot**;

5. This matter shall be **STRICKEN** from the active docket; and

6. This is a final and appealable order.

This the 11th day of September, 2015.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**